SPRINGFIELD FIRE & MARINE INS. CO. v. DAVIS et al. (No. 8840.)

(Court of Civil Appeal of Texas. Dallas. May 26, 1923.)

1. Insurance ⬤⟷665(8)—Finding that insurance agent knew that another than insured owned interest in insured goods and was a partner in business held justified.

In an action on a fire insurance policy, evidence *held* sufficient to sustain jury's finding that defendant's agent knew that another than insured owned an interest in the insured goods and was a partner in the business.

2. Insurance ⬤⟷378(1)—Condition as to sole ownership held waived by agent's knowledge of facts.

Actual knowledge of an insurance agent when the policy was delivered, and while it was in force before a loss, that another than insured owned an interest in the goods insured, waived the policy condition as to sole ownership.

Error from District Court, Delta County; A. P. Dohoney, Judge.

Action by F. M. Davis and another, as partners, against the Springfield Fire & Marine Insurance Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Thompson, Knight, Baker & Harris and Will C. Thompson, all of Dallas, for plaintiff in error.

C. C. McKinney and L. L. James, both of Cooper, for defendants in error.

HAMILTON, J. From plaintiff in error's brief we quote a statement of the nature and result of the case as follows:

"By their original petition F. M. Davis and S. D. Culp, as partners, sued the Springfield Fire & Marine Insurance Company, stating that on August 25, 1920, they owned some merchandise situated in Cooper, Tex., making up a stock of a racket store. On this date the defendant issued to plaintiff a policy of insurance against loss by fire for $2,500 on a stock of merchandise, for the term of one year, beginning August 23, 1920. On April 23, 1921, while the policy was in force, the merchandise was damaged by fire. That at the time of the fire this merchandise was worth $6,002.52, and that the loss to the stock of merchandise was $5,342.96. That the total insurance was $6,500, so that the defendant is indebted to the plaintiff in the sum of $2,054.96. That $6,000 total insurance was permitted by the plaintiff, but that at the time of the issuance of the policy to the plaintiff the defendant knew there had already been $4,000 written on the policy, and issued its $2,500 policy with such information, and by mistake made the total concurrent permit read $6,000. The plaintiff duly performed all of the conditions of the policy and made proof of loss on June 22, 1921. Plaintiff prayed for judgment for $2,054.96.

"Defendant answered by a general demurrer and special exceptions, with general denial, and specially pleaded the record warranty clause set out in policy sued on, and further that the policy provided it should be void in the event the assured named in it should not be the sole and unconditional owner of the property described in the policy. That the policy was issued to F. M. Davis, and that F. M. Davis is not the sole and unconditional owner of the property described in the policy; that he owned only a partial interest in the property; that S. D. Culp, who joined as plaintiff, owned an interest in the property, by virtue of which the policy became void. Defendant pleaded the materiality of said provision.

"By supplemental petition plaintiff alleged that the defendant's agent at the time the policy was issued had notice that S. D. Culp was a part owner of the goods insured, and with such knowledge issued and delivered the policy and received the premium; that the defendant had notice before the writing and delivery of the policy, and subsequently accepted the premium on the same, so that it is estopped from alleging the policy is void in so far as the question of the ownership is concerned.

"The jury found in substance that the agent of the defendant knew at the time the policy was issued that S. D. Culp owned an interest in the stock of goods; that Gaston learned that Culp was a partner in the business after the policy was issued and before the time of the fire. The court rendered judgment for the plaintiffs and against the defendant for $1,425.05, interest from date of judgment, and costs."

On the 23d day of August, 1920, F. M. Davis and S. D. Culp were engaged in the retail business in the town of Cooper. They were conducting what is denominated in the proof as the "variety business," or "racket business," in Cooper. The business was operated under the name of F. M. Davis. Formerly the business was owned by Davis and a Mr. Stell; the interest of the latter having been acquired by S. D. Culp in the spring

of 1919. At the time the policy was issued in 1920, and continuously thereafter until April 23, 1921, while it was in force, the merchandise covered by it, and which was destroyed by fire, was owned by Davis & Culp in the following proportions: One-third belonged to Davis, and two-thirds to Culp. J. G. Gaston was the agent of plaintiff in error in the town of Cooper, solicited the insurance, and wrote and delivered the policy. It was generally known among the business men of Cooper, and among wholesale dealers from whom Davis and Culp made their purchases, that Culp was a part owner. All the checks issued in payment of indebtedness against the business were made in the name of Davis & Culp. On each check appeared in red letters the following: "The Francis Davis Racket Store, Davis & Culp, Owners." The checks issued in payment of the insurance premium on the policy in question bore this notation. Both Davis and Culp testified that the agent knew Culp was a part owner of the business. Davis testified, among other things, as follows:

"I stated that Mr. Gaston knew that Mr. Culp was a part owner in this business. I base that fact—that statement on the fact that I paid him the checks for the policy, the premiums on the policy. I did say that the business was run under the name of F. M. Davis. It is a fact that the checks all bore the name of 'The Francis Davis Racket Store,' but we did not do business under that name; we did business under the name of F. M. Davis, because that was the way the wholesale people knew us; that's the way the invoices came. I do not know that I said anything to Mr. Gaston when I handed him the checks for the premiums. I might have said, 'Here, Mr. Gaston, is your check,' or something like that, or we might have talked about it a little. I don't remember about that. One of these checks is dated November 1, 1919. I don't remember anything that happened, or anything I said, when I gave him this check, only something like, 'Here, Mr. Gaston, here's your money.' I do not remember anything I said to him when I delivered him the check dated December 1, 1919; but we did talk about Mr. Culp being a partner of the store. The first insurance Mr. Gaston wrote for us when Mr. Stell sent him down there; that was when Mr. Stell had an interest in it. I do not know that there was anything about the checks that would inform Mr. Gaston that Mr. Culp was a partner of the business; only he could read the name of the checks, the name of Davis & Culp. I could not swear that anything else came up, when I gave him the checks, that would inform him that Mr. Culp was a partner in the business. Counsel was asking me about the checks that bore the name 'The Francis Davis Racket Store.' All these checks were signed 'F. M. Davis Store,' and that is the way I kept our book account. That was the way we ran our accounts with the wholesalers. Most of the goods we had shipped to us were shipped in the name of F. M. Davis. Mr. Gaston did come to our store, both before and after the issuance of the policy; he was around there once in a while. I did tell him about Mr. Culp having an interest in the business. I remember one time he was in there and said he did not know I had a partner, and I told him that Mr. Culp had purchased an interest in it. The checks you hand me are the ones that were given by myself; they were given for merchandise mostly, and bills that I owed over town, for telephone and such things, for drayage and expenses. I paid everything by check, and the checks will show it. All these checks had on the face of them the words: 'The Francis Davis Racket Store, Davis & Culp, Owners,' in red letters. I said that Mr. Stell owned an interest in this business at one time; he owned a half interest, and later on Mr. Culp bought that. Mr. Stell was the first man who asked Mr. Gaston to write this policy, and it was written in the name of F. M. Davis. These three checks, payable to Mr. Gaston, that I have identified, were for the purpose of paying the premium on this insurance, for the policy written in the name of F. M. Davis."

Mr. Davis also testified that Stell told Mr. Gaston, the agent, that Culp had bought him (Stell) out, and that the agent "had better come and give us some insurance."

Culp testified that he was interested in the business as a partner at the time the policy was issued, he owning two-thirds of the business and Davis owning the other one-third, and that the business was run under the name of F. M. Davis. His principal business was farming, but at different times during Mr. Davis' absence he had charge of the business, conducting and managing it. He testified that he had never at any time made an effort to conceal his partnership interest in the business, and that there was no reason for his doing so. The agent had seen him in the place of business numbers of times, and Culp testified that on one occasion the subject came up between Mr. Gaston, the agent, and himself, and that he told Gaston that he owned a part of the business, and further testified that it was generally known among merchants and business men, insurance men and others, in Cooper, that he was a partner in the business. He testified that he did not know what occasioned Gaston's being in the store at the time he told Gaston that he owned a part of the business; that Gaston was often in the store, frequently dropping in when passing.

The agent testified that he had known Davis about 6 or 7 years; that he indorsed the checks bearing the words printed in red letters as above quoted, cashed them, and got the money. He testified that he did not remember whether or not Culp ever spoke to him about owning an interest in the store; that Mr. Culp might have spoken to him about it; he would not be positive as to this. He testified that there was no good reason why he would not want to write insurance for Culp, and that he had solicited his insurance. He also stated that he "would

not presume to say that it was not generally known that Mr. Culp was a partner in that business."

The facts as a whole reveal that it was generally known that Davis and Culp owned the business in partnership, and that this knowledge had been communicated to Gaston, plaintiff in error's agent, before the fire, if not before the insurance was written. There is not a suggestion in the testimony that either Davis or Culp made any misrepresentation as to the ownership of the business, or sought to prevent disclosure of Culp's interest being made to the agent of plaintiff in error. It is not contended that plaintiff in error suffered any harm or disadvantage by reason of the policy being made in the name of F. M. Davis, and containing no recital of Culp's part ownership. It is admitted that the policy would have been issued just as readily with Culp's name inserted as part owner as without it.

[1] The case was submitted to the jury upon special issues. The special issues and the respective answers to them were as follows:

"Did J. G. Gaston, agent of the defendant, know at the time the policy in controversy was issued, to wit, on the 23d of August, 1920, that S. D. Culp owned an interest in the stock of goods and business being conducted under the name of F. M. Davis? Answer 'yes' or 'no.' Answer: Yes.

"If you have answered the preceding question in the negative, then did said Gaston learn that said Culp was a partner in said business from either Davis or Culp after the issuance of said policy and before the time of the fire? Answer 'yes' or 'no.' Answer: Yes."

The pleadings and the proof clearly justify the submission of these issues as determinative of the case. The evidence amply sustains each of the findings made by the jury, and the legal effect of those findings is properly reflected in the judgment of the court.

[2] The policy of insurance delivered contained a provision that the policy should be void if the interest of the insured in the property were not truthfully stated therein, and also contained a provision that, if the interest of the insured in the property be other than unconditional and sole ownership, the entire policy should be void. Upon these provisions alone, plaintiff in error relies to defeat the recovery. Since in our judgment the proof is sufficient to disclose that the agent had knowledge of all the facts with reference to the true ownership at the time the policy was delivered, and while the policy was in force previous to the loss, we think it must be held as a matter of law that he, acting within the scope of his authority, waived those provisions. There was no concealment and no misrepresentation practiced by defendants in error. The fact that Culp was a part owner in the business was of no concern to the agent, so far as protecting the interests of plaintiff in error, his principal, was involved, since the policy would have been issued and the risk assumed just as readily with Culp's name inserted in the policy in conjunction with that of Davis as with it omitted from the policy.

Proof of general knowledge of the copartnery ownership of property insured is held to be competent to impute such knowledge to the insurance agent and estop the insurer from insisting upon a clause in the policy thus waived. Actual knowledge of the true ownership on the part of the agent before the loss in this case was established by the evidence, which, as stated, reveals that there was no effort whatever to practice concealment or misrepresentation upon plaintiff in error's agent and representative. This proof establishes, in legal effect, that the provisions of the policy relied upon by plaintiff in error were waived.

The judgment is affirmed.